(C. D. 1699)

DORF INTERNATIONAL, LTD. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 5, 1955)

Plaintiff not represented by counsel.

*Warren E. Burger*, Assistant Attorney General (*Dorothy C. Bennett*, trial attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on portions of a shipment of human hair at 17½ per centum ad valorem under paragraph 1523 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, as manufactures of human hair, not specially provided for. It is claimed that the merchandise is dutiable at 10 per centum ad valorem under said paragraph, as modified by the Annecy

Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52373, and the President's proclamation of May 13, 1950, T. D. 52476, as human hair, cleaned or commercially known as drawn, but not manufactured.

The pertinent provisions of the tariff act, as modified, are as follows:

PAR. 1523 [as modified by the Torquay Protocol, T. D. 52739]. Manufactures of human hair, or of which human hair is the component material of chief value, not specially provided for (except nets and nettings), 17½% ad val.

PAR. 1523 [as modified by the Annecy Protocol, T. D. 52373, and the President's proclamation of May 13, 1950, T. D. 52476]. Human hair, cleaned or commercially known as drawn, but not manufactured, 10% ad val.

It appears from the record herein that the shipment consisted of two cases of human hair, only one of which was examined at the appraiser's stores. The merchandise was furnished by seven different suppliers in Italy and was imported on or about November 12, 1952. Some of the items were assessed at 10 per centum ad valorem under paragraph 1523, as originally enacted, as raw human hair, some at the same rate under said paragraph, as modified by the Annecy Protocol, *supra*, as human hair, cleaned or commercially known as drawn, but not manufactured, and the remainder at 17½ per centum ad valorem under said paragraph, as modified by the Torquay Protocol, *supra*, as manufactures of human hair. Only the items assessed at 17½ per centum ad valorem are before us.

At the trial, samples of the merchandise assessed at 17½ per centum ad valorem were introduced into evidence as representative of the items described on the invoice as follows:

| Supplier | Invoice description | Exhibit |
|---|---|---|
| Guiseppe Garneri | 11.50 kilos prepared human hair | Coll. Ex. 1 |
| Do | 4.20 kilos prepared human hair | Coll. Ex. 1 |
| Baudino Costantino | 15.00 kilos human hair prepared | Ex. 2 |
| Do | 5.00 kilos human hair prepared | Ex. 2 |
| Do | 1.12 kilos human hair prepared | Ex. 3 |
| Cav. Cesare Raina | 5.00 kilos human hair prepared | Ex. 4 |
| Dao Constant | 4.70 kilos human hair prepared | Ex. 5 |
| Do | 14.50 kilos human hair prepared | Ex. 6 |
| Do | 5.55 kilos human hair prepared | Coll. Ex. 7 |

Paul K. Fleischer, a partner in the firm of Joseph Fleischer & Co., the importer of the merchandise, appeared for the plaintiff and testified that the items represented by exhibits 1, 3, 5, 6, and 7 consisted of human hair, tied up, washed, but not manually waved. On the advice and with the consent of the customs examiner, counsel for the Government conceded that said items, which were in a nonexamination case, were entitled to classification at 10 per centum ad valorem under paragraph 1523, as modified by the Annecy Protocol, *supra*, as human hair, cleaned or commercially known as drawn, but not manufactured.

The only controversy remaining in the case concerns the merchandise represented by exhibits 2 and 4, called by the witness "frisure forcé" (artificially waved hair). The witness testified that he had seen such items being made in Italy, where he personally purchased this merchandise. He said that they are made from hair cut from human heads, which is considered cut hair, or from combings; that exhibit 2 was made from combings and exhibit 4 from cut hair. He described the method of production as follows: Where combings are used, the matted mass is first straightened out by means of metal combs called hackles. Then the hair is washed and turned so that the roots come together. This process changes it from so-called nonremis to remis or prepared hair. The hair is separated by means of a hackle and the roots placed at one end and the points at the other. It is then necessary to draw the hair and sort it into similar lengths. The lengths are 6, 8, 10, 12, 14, 16, 18, and 22 inches long, but not exact lengths, because if the hairs are all of one length they will snarl and cannot be combed. Such lengths are tied into bundles at the root ends. Cut hair is treated similarly, except that it need not be turned as all the points are already at one end. To make a frisure forcé, the length is wound around a spindle about 10 inches long and cooked in either steam or hot water for a half hour to 3 or 4 hours. Then it is dried, taken off the stick, and combed.

The witness added that remis hair is finished and prepared hair; that it can be used for switches or straight hair; and that waving is an additional process, though a minor one.

Plaintiff called Aaron Zauder, an importer and manufacturer, who testified that he was familiar with this type of merchandise and that to make a frisure forcé or any kind of curly hair an ordinary piece of remis hair, which has been washed and cleaned, is rolled on sticks, boiled, and combed out.

The question before us is whether the items known as frisure forcé were properly classified by the collector as manufactures of hair or are classifiable, as claimed by the importer, as human hair, cleaned or commercially known as drawn, but not manufactured.

Different rates for human hair in various forms have long been provided for in tariff acts. The Tariff Act of 1883 provided separately for human hair, when raw, uncleaned, and not drawn; if clean or drawn, but not manufactured; and when manufactured. Later acts have provided for human hair, when raw, or when raw, uncleaned, and not drawn; if cleaned or drawn (or commercially known as drawn), but not manufactured; and for manufactures of human hair. Under such provisions, hair which has been cleaned, drawn, and curled has been held classifiable as hair, cleaned or drawn, but not manufactured, rather than as a manufacture of hair. *In re Graf Bros.*, T. D. 12213, G. A. 1027; *In re Chas. D. Stone & Co.*, 13 Treas. Dec. 499, Abstract 15063. In the case first cited, which arose under the Tariff Act of 1890, the

Board of General Appraisers pointed out that the hair, after being cleaned and drawn, had been subjected to a process of curling, in which condition it was known as "frisure de fer," but was not susceptible of use by consumers; that it was intended to be manufactured into toupees, wigs, and other articles, the difference between it and the ordinary cleaned and drawn hair being that one was designed to be made into articles having straight and the other curly hair. The board concluded:

We are of the opinion that the merchandise is not a manufacture of hair within the meaning of the statute, it having undergone no process of manufacture by skilled labor, whereby its name, character, and intended purpose of use has been changed from hair drawn or cleaned provided for in paragraph 447.

We find as facts that the merchandise is human hair drawn and cleaned but not manufactured into articles.

The *Stone* case, which arose under the Tariff Act of 1897, involved hair which had been curled to prevent it from becoming snarled while being transported and handled. The board concluded from an examination of the sample that it had not been subjected to such treatment as would constitute it a manufacture of hair.

Since these cases were decided, the Tariff Acts of 1909, 1913, 1922, and 1930 have been enacted without any material changes in the provisions for human hair here involved. Under such circumstances, the doctrine of legislative ratification of judicial construction is controlling, unless there are very compelling reasons for holding otherwise. *August Bentkamp* v. *United States*, 40 C. C. P. A. (Customs) 70, C. A. D. 500; *Werner G. Smith Co., Div. Archer Daniels Midland Co.* v. *United States*, 40 C. C. P. A. (Customs) 90, C. A. D. 503. In the latter case, the court said (p. 97):

The case of a single reenactment subsequent to a decision of the Customs Court is to be distinguished from that wherein subsequent to such a decision Congress has reenacted the construed provision in a series of three or four successive acts. In the latter situation, the doctrine of legislative ratification of judicial construction is controlling in the absence of very compelling reasons to the contrary. The reason for this is that Congress is presumably cognizant of such judicial construction and its consequences, and to hold otherwise in the face of such a series of reenactments would be attributing to that body an unusual indifference or lack of knowledge. That is an attitude to be avoided.

The only reason which the court's research has found for a holding contrary to that in the cited cases is a statement in the Summary of Tariff Information, 1929 (p. 1996), that—

Manufactures of human hair include hair nets, switches, *curls*, transformations, wigs, and toupees. [Italics supplied.]

This is merely an expression of opinion of the Tariff Commission (*Elmer T. Middleton* v. *United States*, 28 C. C. P. A. (Customs) 214, C. A. D. 148) and may well refer to finished articles ready for use as parts of a coiffure. While there is no testimony in the record as to

the use of the instant merchandise, the samples are potent witnesses. They consist of lengths of hair, similar to those classified as cleaned, drawn, but not manufactured, except that they have been curled. They are not finished hair pieces ready for use by the ultimate consumer and appear to be similar to those described in the *Graf Bros.* case, *supra*. In that case, the board indicated that the difference between curled hair and ordinary drawn hair was that one was designed for use in making articles with curly hair and the other for those with straight hair. In the instant case, the witness Fleischer stated that waving hair was a minor process added to the complicated operation of changing raw hair into remis hair. That curling hair has long been considered an adjunct to the process of making prepared hair is indicated by the following statements in a Tariff Information Survey on the articles in paragraph 351 of the Tariff Act of 1913, prepared by the Tariff Commission in 1921 for the use of the Ways and Means Committee of the House of Representatives:

> The raw hair is washed, combed, drawn, or heckled, sorted into lengths, and then sterilized by boiling. This is slow and tedious hand work, and is done abroad by hand labor. If curls or waves are desired the hair is wrapped around small sticks of the desired size. It is then boiled, after which it is baked. The curl or wave remains after the stick is removed.

> In making switches, the method in general use is to weave the hair (several strands at a time) on three strings, the hair being the weft and the strings the warp. When the required amount is woven the strings are pulled taut, wrapped around the root ends and tightly tied. Other articles are made with an elaboration of this method, additional strings being added to give the desired width for wigs, bangs, etc. * * *

In our view, therefore, there are no compelling reasons for a holding contrary to that in the *Graf Bros.* case, *supra*, and it is controlling here.

For the reasons stated, we hold that all the items of merchandise involved herein are properly dutiable under paragraph 1523 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52373, and the President's proclamation of May 13, 1950, T. D. 52476, at 10 per centum ad valorem, as human hair, cleaned or commercially known as drawn, but not manufactured. The protest is sustained, and judgment will be rendered for the plaintiff.