(C. D. 2010)

BLUEFRIES NEW YORK, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 20, 1958)

*John D. Rode* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest consists of animal hair, which was assessed with duty at the rate of 5 per centum ad valorem under the provision in paragraph 1524, Tariff Act of 1930, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, reading as follows—

Hair, curled, suitable for beds or mattresses * * *.

The protest claim is for free entry under the provision in paragraph 1688 of the said act for—

Hair of horse, cattle, and other animals, cleaned or uncleaned, drawn or undrawn, but unmanufactured, not specially provided for.

There is no real dispute as to the facts. The merchandise consists of horse manes and hog hair which were mixed and cleaned. Such hair is not naturally curly, and, for upholstery or mattress use in which the curl is desired so that the resultant product will be springy, springiness must be placed in the hair by some agency. The mixed and cleaned loose hair was fed into a machine which put a curl in the loose hair by a continuous twisting process and which, at the same time, formed a rope of the curled material.

The record does not indicate whether animal hair can be curled without at the same time forming a rope. There is some indication, however, that curled animal hair is sometimes shipped in a form other than the rope form, i. e., in loose form. Whether that form is produced without first producing the rope form, or whether it represents an advanced stage of curled animal hair which was originally in rope form, does not appear.

Apparently, the curling of the hair with the formation of the rope is desired as a simultaneous process, for the reason that curled hair is most conveniently and economically shipped in rope form. In that form, it uses only from one-third to a tenth as much space as it would if it were in the loose form. The ropelike material is sterilized, cut in 100-foot lengths, baled, and imported into this country.

In order to use the material for beds or mattresses after importation, the rope must be untwisted or opened and picked apart, which can be done by hand, but usually is done by a machine, variously called a teaser, picker, or opener. The imported rope material is fed into the machine, and the output thereof is the individual curled hairs in a fluffy condition. The latter is the material used for beds and mattresses.

The plaintiff does not deny that the animal hair here involved is curled. It contends, however, that the merchandise at bar is not "suitable for beds or mattresses," and, hence, was erroneously classified.

The sole basis for the plaintiff's claim in that regard is its contention that the term "suitable for beds or mattresses" must be interpreted in accordance with the general rule expressed in *Worthington* v. *Robbins*, 139 U. S. 337, 341, 35 L. ed. 181, 182, as follows:

* * * In order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported.

Plaintiff points out that the evidence given by witnesses for both parties is in agreement in establishing that the ropelike material, in which form the merchandise is actually imported, is not suitable for

beds or mattresses *in its condition as imported*, but must be subjected to further processes, i. e., must be opened and picked apart before being suitable for such purposes.

The general rule of interpretation as above expressed has been uniformly adhered to, the sole exception being "with respect to merchandise, the classification of which is, by the statute, made dependent upon use" after importation. *Leonard Levin Co.* v. *United States*, 27 C. C. P. A. (Customs) 101, C. A. D. 69.

The reference there, however, is apparently to the so-called "conditional status" provisions of the tariff act, i. e., those making classification dependent upon actual use of the particular goods in this country after importation. An example of such a provision is that relating to the classification of leather "imported to be used in the manufacture of boots, shoes, or footwear" in paragraph 1530 (c) of the Tariff Act of 1930.

Congress has frequently made the tariff status of imported merchandise dependent upon suitability for certain purposes or uses. The following examples were picked at random from various provisions of the Tariff Act of 1930:

Paragraph 28 (a): "suitable for medical use."

Paragraph 65 (b): "suitable for sale at retail."

Paragraph 234 (c): "suitable for use as monumental or building stone."

Paragraph 368 (a): "suitable for measuring time, distance, speed, or fares."

Paragraph 1518: "suitable for use as millinery ornaments."

Paragraph 1527 (d): "suitable for use in the manufacture of any of the foregoing articles."

Paragraph 1530 (d): "suitable for conversion into boots, shoes, or footwear."

That the suitability for the purposes or uses specified in the various tariff paragraphs is intended to be that which exists at the time of importation is made clear by the decision of our appellate court in the case of *United States* v. *Amerman & Patterson et al.*, 9 Ct. Cust. Appls. 244, T. D. 38205. The imported merchandise, in that case, consisted of precipitated chalk. It was classified for duty purposes under a provision in paragraph 15 of the Tariff Act of 1913 for "chalk, precipitated, suitable for medicinal or toilet purposes," and was claimed to be entitled to a lower rate of duty under a provision for "chalk, ground or bolted."

The record showed that, in its condition, as imported, the involved chalk was not suitable for medicinal or toilet purposes, because of impurities incident to its packing and importation into this country

and also impurities in the chalk when exported from abroad, such as coal dust.

Our appellate court pointed out that the term "suitable for" had been defined by that court as follows:

A thing to be suitable, as that term is commonly understood, must be fit and appropriate for the end to which it is to be devoted. In the tariff law the term "suitable" means actually, practically, and commercially fit. Kahlen v. United States (2 Ct. Cust. Appls. 206, 208; T. D. 31947).

and stated the question to be "whether the imported chalk *at importation* is actually, practically, and commercially fit for use for medicinal or toilet purposes" [italics added].

Inasmuch as the record established in the cited case that, after importation, the chalk had to be bolted and otherwise treated before it became a trade article fit or adapted for medicinal or toilet purposes, the court held that, in its imported condition, it was not "suitable for medicinal or toilet purposes."

The evidence in the case at bar indisputably establishes that, in the condition as imported, the animal hair involved is not actually, practically, or commercially fit for bed or mattress purposes, and requires further processing, to wit, opening and picking apart, before being fit or adapted for such purposes. While the record indicates that the rope form was the only form in which the various witnesses for the parties had imported or purchased curled animal hair, it does not establish that that is the only form in which the article of commerce, curled animal hair, is offered and sold. On the contrary, it appears that curled animal hair is offered and sold in loose form, in which form it is suitable for beds or mattresses, without further processing.

We are of the opinion that the facts and the law applicable thereto remove the merchandise from classification under paragraph 1524, under which it was assessed with duty by the collector. The question for determination then is whether it is properly classifiable under the provision in paragraph 1688 of the Tariff Act of 1930 for—

Hair of horse, cattle, and other animals, cleaned or uncleaned, drawn or undrawn; but unmanufactured, not specially provided for,

under which plaintiff claims.

Plaintiff relies upon a judicial construction of long standing in relation to language similar to the above but applicable to human, as distinguished from animal, hair. Paragraph 1523 of the Tariff Act of 1930 provides for "Human hair * * * cleaned or commercially known as drawn, but not manufactured." Predecessor provisions as far back as the act of 1883 contained identical or like provisions. In the comparatively recent case of *Dorf International, Ltd.* v. *United States*, 34 Cust. Ct. 164, C. D. 1699, the third division of this court had before it an issue relating to human hair which had been cleaned

and drawn, and then curled by being wound around a spindle and cooked in either steam or hot water for a half hour to 3 or 4 hours, after which it was dried, taken off the stick, and combed. The question was whether such hair was "not manufactured."

The court noted that, in cases arising under the acts of 1890 (*In re Graf Bros.*, T. D. 12213) and 1897 (*In re Chas. D. Stone & Co.*, 13 Treas. Dec. 499, Abstract 15063), it had been uniformly held that curling was not such a treatment of human hair as removed it from the category of hair "not manufactured." The court also noted that—

> Since these cases were decided, the Tariff Acts of 1909, 1913, 1922, and 1930 have been enacted without any material changes in the provisions for human hair here involved. Under such circumstances, the doctrine of legislative ratification of judicial construction is controlling, unless there are very compelling reasons for holding otherwise. * * *

Finding no reasons for holding otherwise, the court held that the curled human hair was "not manufactured."

The tariff provision which was the subject of construction in the *Dorf* case, *supra*, was that in paragraph 1523 of the act of 1930, reading as follows:

> Human hair, * * * cleaned or commercially known as drawn, but not manufactured * * *.

The provision under which plaintiff here claims, paragraph 1688 of the said act, reads:

> Hair of horse, cattle, and other animals, cleaned or uncleaned, drawn or undrawn, but unmanufactured, not specially provided for.

While it thus appears that, aside from the source of the hair provided for in the two provisions, they are couched in substantially identical terms, we are, nevertheless, of the opinion that the correspondence or similarity of the two provisions is not sufficient to render the judicial and legislative interpretation of the one controlling of the other.

We may take judicial notice of the fact that some human hair is naturally wavy or curly and that some is not. Naturally curled human hair, cleaned or commercially known as drawn, but not otherwise manufactured, would take classification under paragraph 1523. It should follow that the curling of naturally straight human hair would seem to be nothing more than bringing it into the same condition as naturally curled human hair and that it should take classification under the same provision.

On the other hand, the record indicates that practically all animal hair coming naturally from the animal is straight, and the curling process is an artificial process put into the hair by man. The curl-

ing of human hair, obviously done for appearance's sake, therefore, would not seem to have any relation to the curling of animal hair, which the record shows is done to impart a springiness thereto so as to make it useful in upholstery and mattresses.

Moreover, Congress has seemingly consistently differentiated between human hair and animal hair by making separate provisions therefor, and there is nothing in the language used in the comparable provisions to show that the phraseology applicable to human hair was intended to have the same meaning in connection with animal hair.

Since it thus seems clear that paragraphs 1523 and 1688 are not statutes relating to the same matter or subject, they are not statutes *in pari materia*, and there is no reason why the interpretation or construction of one should be made applicable to the other.

Undoubtedly, the curling of the animal hair at bar advanced the condition of the material, animal hair, along the lines of its ultimate use, while still leaving it a material. This is apparent for the reason that no new name, character, or use was conferred on the material, nor was it converted into a new and different article. The change wrought by the curling process imparted a springiness to the hair which it did not have before, but a new use in upholstery or mattress manufacture could not be realized until further processing by way of opening and picking apart had been performed and, at the conclusion of the process, the results still remained animal hair. Consequently, it may be said that the hair was not so advanced by a process of manufacture that a new use had been conferred on the material, and yet it was advanced in condition towards its ultimate use.

We think the situation in the case at bar is somewhat analogous to that which obtained in the case of *Chas. H. Demarest, Inc.* v. *United States*, 44 C. C. P. A. (Customs) 133, C. A. D. 650, and is controlled by the principles therein expressed. In that case, certain palmyra fibers and stalks had been assessed with duty under the provision in paragraph 1558 of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, for fibrous vegetable substances, manufactured, and were claimed to be entitled to free entry under the provision in paragraph 1684 of the said act for fibrous vegetable substances, not manufactured.

In its decision in the case, our appellate court said:

The applicable law is clear. To constitute an article "manufactured" it is not necessary that the article be converted into a new and different article, having a distinctive name, character or use different from that of the original article (such would be the requirements to constitute an article a "manufacture"), but only that the article be so processed that it be removed from its crude or primary state, though it remain a variety of the original material. *United States* v. *C. J.*

*Tower & Sons*, 44 C. C. P. A. (Customs) 1, C. A. D. 626. This rule is tempered, however, by the rule that an article will not be classified as "manufactured" by reason of its having been subjected to a manufacturing process designed solely to prepare the article for shipment, even though such preparation incidentally advances the article for its intended use. *Lackawanna Steel Co., et al.* v. *United States*, 10 Ct. Cust. Appls. 93, T. D. 38359.

In the *Demarest* case, *supra*, our appellate court found that certain preimportation processes to which the stalks had been subjected, such as soaking, beating, hackling, drying, and sorting, were not manufacturing processes, within the meaning of the term "manufactured," as used in the tariff act, inasmuch as such processes were primarily applied to the material in order "to get it by itself," i. e., in order to produce the unmanufactured fibrous vegetable substances, palmyra fibers, and stalks, of commerce, and to place it in a condition in which it could be shipped. However, a further operation, to wit, trimming by cutting both ends, was found to have been performed *primarily* in order to satisfy the importer's order which, in turn, was based upon considerations of the efficient production of brushes and brooms, and only *incidentally* for packing and shipping purposes. The trimming, therefore, was held to constitute such a manufacture of the imported material as took it out of the category of a material, not manufactured, and rendered it a material, manufactured.

The evidence in the case at bar does not show whether the operation which at the one time curled the animal hair involved and twisted it into a rope was primarily performed for the purpose of producing the unmanufactured animal hair of commerce and placing it in a condition whereby it could be shipped, or whether it was performed primarily to produce curled animal hair and thus advance the hair in condition towards its ultimate use.

The burden of establishing the correctness of its contention rested upon the plaintiff, and, for the foregoing reasons, we are constrained to hold that it did not meet its burden.

The case of *American Moss Company, Inc.* v. *United States*, 3 Cust. Ct. 325, Abstract 41796, cited by counsel for the plaintiff in the brief filed in its behalf, is not in point, inasmuch as the animal hair there involved was found not to have been curled.

Judgment will, therefore, issue overruling the protest accordingly.